**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHELE S. MORGAN-GOMEZ, | ) No. ED CV13-53-AS |
| | ) |
| Plaintiff, | ) **MEMORANDUM DECISION AND ORDER** |
| v. | ) |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**I.**

**INTRODUCTION**

On January 18, 2013, Plaintiff Michele S. Morgan-Gomez ("Plaintiff") filed a Complaint, pursuant to 42 U.S.C. §§ 405(g) and 1383(c) (Docket Entry No. 3). The Complaint seeks to reverse the decision of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying Plaintiff's applications for a period of disability, disability insurance benefits, and supplemental security income. (Compl. 1-2.) The Complaint requests the Court to award benefits or, in the alternative, remand the matter

1

for a new hearing.   (See id. at 2-3.)   On August 1, 2013, Defendant filed an Answer to the Complaint (Docket Entry No. 13) and a Certified Administrative Record ("AR") (Docket Entry No. 14).   On August 23 and August 27, 2013, respectively, the parties consented to the jurisdiction of the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c) (Docket Entry Nos. 17, 18).   On October 17, 2013, the parties filed a Joint Stipulation for Disposition ("Joint Stip.") (Docket Entry No. 23).   For the reasons stated below, the decision of the Commissioner denying benefits is REVERSED and this matter is REMANDED to the Commissioner for further administrative action consistent with this Order.

## II.

### PROCEDURAL HISTORY

On July 9, 2009, Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income, alleging a period of disability beginning on November 6, 2006.  (AR 138-41, 142-49.)  On September 26, 2009, the Commissioner issued an initial denial of Plaintiff's applications.   (Id. at 69-73.)   On March 11, 2010, the Commissioner denied Plaintiff's applications upon reconsideration.   (Id. at 76-81.)   On May 6, 2010, Plaintiff requested a de novo hearing before an Administrative Law Judge ("ALJ").   (Id. at 82-84.)

On June 2, 2011, ALJ Joseph D. Schloss conducted a hearing in this matter in San Bernardino, California.   (Id. at 37-64.)   At the hearing, Plaintiff, represented by counsel, appeared and testified.

2

(Id. at 37, 43-58.)   Moreover, William Debolt, a board-certified neurologist who did not examine Plaintiff, and Sandra Fioretti, a vocational expert, both testified at the hearing as well.   (Id. at 30, 37, 39-44, 47, 58-61.)   On August 10, 2011, the ALJ issued a decision unfavorable to Plaintiff.   (Id. at 21-32.)

On October 6, 2011, Plaintiff requested that the Appeals Council review the ALJ's decision.   (Id. at 17-19.)   On October 26, 2012, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision final.   (Id. at 1-3.)   On January 18, 2013, Plaintiff filed her Complaint in this Court, seeking to reverse the ALJ's decision.   (Compl. 1-3.)   The parties stipulate that Plaintiff's initiation of this civil action was timely and that the Court has jurisdiction to review the final decision of the Commissioner. (Joint Stip. 3.)

### III.
### FACTUAL BACKGROUND

### A.   Plaintiff's Allegations During The Administrative Proceedings

When Plaintiff applied for benefits, she asserted that she was disabled because she had "[e]pilepsy, grand-mal seizures, memory loss, asthma, [and] migraines." (AR 69.)   At the hearing, she testified about each of these purported conditions, and also asserted that she had anxiety.   (See id. at 40 (seizures); id. at 45, 50-51, 54, 55 (memory loss);   id. at 55-56 (migraines);   id. at 57-58

(anxiety).)   With regard to Plaintiff's alleged memory loss, she claimed that she had difficulty remembering several things, including the obligation to take her seizure medication and the dates on which she had certain seizures. (See id. at 45, 50-51, 54, 55.) Although Plaintiff did not argue before the ALJ that she was disabled because she met the Commissioner's listing for mental retardation, (see id. at 37-64 (transcript of administrative hearing)), Plaintiff raised the issue before the Appeals Council. (See id. at 223-24; see infra Parts IV, VII.A (discussing the effect of meeting the listing for mental retardation).)   In the Joint Stip. filed by the parties in this civil action, Plaintiff again asserts that she is disabled because her impairments met the Commissioner's listing for mental retardation. (See Joint Stip. 6-9, 18.)

## B.   Dr. Taylor's Report

On an unspecified date, Dr. Clifford Taylor, a licensed clinical psychologist, examined Plaintiff at the request of the California Department of Social Services. (See AR 273, 278.)   On August 28, 2009, Dr. Taylor issued a report summarizing that evaluation. (Id. at 273-78.)   According to the report, Dr. Taylor subjected Plaintiff to several tests including, inter alia, the Wechsler Adult Intelligence Scale, Fourth Edition ("WAIS-IV"), and the Wechsler Memory Scale, Third Edition ("WMS-III"). (See id. at 276-77.)

The WAIS-IV has a "full scale IQ score," which is comprised of four composite scores: verbal comprehension, perceptual reasoning, working memory, and processing speed. (See id. at 276; Press

4

Release, Pearson Educ., Inc., Wechsler Adult Intelligence Scale, Fourth Edition Now Available from Pearson (Aug. 28, 2008), http://www.pearsonclinical.com/psychology/news/2008/wechsler-adult-intelligence-scale-fourth-edition-now-available-from-pearson.html.) Here, Dr. Taylor concluded that Plaintiff had a verbal comprehension score of 72 (borderline classification), a perceptual reasoning score of 86 (low average classification), a working memory score of 63 (borderline classification), a processing speed score of 71 (borderline classification), and a full scale IQ score of 70 (borderline classification). (AR 276.) After administering the WMS-III on Plaintiff, Dr. Taylor concluded that Plaintiff's score "plac[ed] her in the extremely low range." (Id. at 276-77.) Dr. Taylor also opined that "[Plaintiff's] delayed auditory memory was assessed to be in the low range as evidenced by an Auditory Delayed Subtest Composite score . . . [from] the [WMS-III]. Her sustained concentration was poor as she could repeat only 3 digits backward. Her long-term memory was intact for events and situations." (Id. at 276.)


C.   **Dr. Amado's Report**


On September 9, 2009, Dr. H. Amado, a physician who did not examine Plaintiff, rendered an opinion after evaluating Dr. Taylor's report and other evidence concerning Plaintiff's purported impairments. (See AR 282-92.) Dr. Amado concluded that there was "[i]nsufficient evidence to substantiate the presence [of impairments meeting or equaling the listing for mental retardation]." (See AR 285.) Dr. Amado reasoned that Plaintiff had "no [history of] mental

5

health care, . . . no history of special education services in school, and no [Drug Addiction and/or Alcoholism][1] involvement." (Id. at 292.)   Dr. Amado also opined that there was a "likely suppression of [the full scale IQ score] by very low [working memory/processing speed scores] that were commensurate with [her WMS-III] scores." (Id. at 292; see also id. at 276 (Dr. Taylor's opinion provides a key for these abbreviations).)   Dr. Amado concluded that "[Plaintiff's] [m]ental allegations are credible but not quite at listing levels." (Id. at 292.)

D.  **Dr. Debolt's Testimony**

Dr. Debolt reviewed Plaintiff's medical records and testified at the administrative hearing. (See AR 30, 37.)   During Dr. Debolt's testimony, he briefly addressed Dr. Taylor's report: "[Plaintiff] alleges that there is some memory problems [sic], but [Dr. Taylor's] psychological testing . . . did not confirm that.   So that in my opinion, she does not meet the listing for neurological conditions nor psychiatric conditions." (Id. at 41.)   The remainder of Dr. Debolt's testimony addressed Plaintiff's alleged seizures, asthma, and migraines. (See id. at 39-44, 47.)

---

[1]   To decipher the abbreviation "DAA," the Court referred to a list of acronyms provided by the Social Security Administration. GN 0440.001 List of Acronyms, Soc. Sec. Admin. (July 2, 2012), https://secure.ssa.gov/apps10/poms.nsf/lnx/0204440001.

**IV.**

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**


"To qualify for disability benefits, a claimant must show that a medically determinable physical or mental impairment prevents [him or] her from engaging in substantial gainful activity[,][2] and that the impairment is expected to result in death or to last for a continuous period of at least twelve months." Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must "render[] the claimant incapable of performing the work [he or she] previously performed and . . . of performing any other substantial gainful employment that exists in the national economy." Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).


To decide if a claimant is entitled to benefits, an ALJ conducts a five-step sequential inquiry. 20 C.F.R. §§ 404.1520, 416.20. The steps are:


    1.  Is [the] claimant presently working in a substantially
    gainful activity?  If so, then the claimant is not disabled
    within the meaning of the Social Security Act.  If not,
    proceed to step two.
    2.  Is the claimant's impairment severe?  If so, proceed to
    step three.  If not, then the claimant is not disabled.
    3.  Does the impairment "meet or equal" one of a list of
    specific impairments described in 20 C.F.R. Part [404,
    Subpart P,] Appendix 1 [("Appendix 1")]?  If so, then the
    claimant is disabled.  If not, proceed to step four.

---

[2] "Substantial gainful activity" is defined as "work that . . . [i]nvolves doing significant and productive physical or mental duties[] and . . . [i]s done (or intended) for pay or profit." 20 C.F.R. §§ 404.1510, 416.910.

4.  Is the claimant able to do any work that he or she has done in the past?  If so, then the claimant is not disabled.  If not, proceed to step five.
5.  Is the claimant able to do any other work?  If so, then the claimant is not disabled.  If not, then the claimant is disabled.

Bustamante v. Massanari, 262 F.3d 949, 954 (9th Cir. 2001) (citations omitted) (citing 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f)).

    The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Id. at 953-54 (citing Tackett, 180 F.3d at 1098).  "Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry."  Id. at 954 (citing Tackett, 180 F.3d at 1098 n.3).  This "special duty" requires the ALJ "to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel."  Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citing Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001)); Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)).

    If a claimant has an impairment (or impairments) that meets any of the listings in Appendix 1 and satisfies the durational requirement, that claimant is disabled, regardless of that individual's age, education, or work experience.  See 20 C.F.R. §§ 404.1520(d), 416.920(d); see also Celaya v. Halter, 332 F.3d 1177, 1181 (9th Cir. 2003) ("If a claimant does meet the listing criterion for one or more impairments, [he or] she is judged to be disabled without the need to conduct any further analysis.").  To "meet" a

8

listing, the claimant must establish that his or her condition(s) satisfies each element of the listed impairment.  See Tackett, 180 F.3d at 1099.

Moreover, if a claimant has an impairment that is "medically equivalent" to one or more listed impairments, or if the combined effect of all impairments is "medically equivalent" to a listed impairment, then a claimant is conclusively presumed to be disabled. See 20 C.F.R. §§ 404.1520(d), 404.1526(b)(2)-(3), 416.920(d), 416.926(b)(2)-(3); see also Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) (alteration in original) (citation omitted) (citing 20 C.F.R. § 404.1520(d)) ("If a claimant's impairment does not meet the criteria specified in the listings, he or she is still disabled if the impairment equals a listed impairment.  If a claimant has more than one impairment, the Commissioner must determine 'whether the combination of [the] impairments is medically equal to any listed impairment.'").  An impairment (or impairments) is medically equivalent to a listed impairment if it is "at least equal in severity and duration to the criteria of any listed impairment."  20 C.F.R. §§ 404.1526(a), 416.926(a).

**V.**

**THE ALJ'S DECISION**

The ALJ employed the five-step sequential evaluation procedure discussed above.  (See AR 24-31.)  At the first step, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since November 6, 2006.  (Id. at 26.)  At the second step,

9

the ALJ found that Plaintiff suffered from the following severe impairments: a seizure disorder and asthma.  (Id. at 26.)  At step three, the ALJ concluded the following:

> The evidence does not support a finding that the claimant has the severity of symptoms required either singly or in combination to meet or equal any medical listing, including those found under 11.00 [(neurological impairments)] and 3.00 [(respiratory impairments)].  No treating or examining physician has recorded findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment.  A more detailed discussion [is provided in the analysis of Plaintiff's residual functional capacity].

(Id. at 27.)

> Before proceeding to step four, the ALJ concluded that:

> [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant cannot work at unprotected heights; she is precluded from climbing ladders, ropes or scaffolds; she is precluded from driving; she is precluded from working around unprotected bodies of water; she should not be responsible for the safety of others; she should not work in an environment with fumes, dust, odors or poor ventilation or gases.

(Id.)  In the ALJ's analysis of Plaintiff's residual functional capacity, the ALJ considered Plaintiff's purported seizures, asthma, migraines, anxiety, and memory loss, and the alleged severity of those conditions.  (See id. at 27–31.)  With regard to Plaintiff's memory loss, the ALJ rejected the memory impairments found by Dr.

Taylor because they were "not supported by the claimant's admitted activities [(*e.g.*, self care without assistance, ability to complete household chores)] or mental health treatment history." (See id. at 28, 30.) The ALJ also noted that "[Plaintiff] testified that she completed high school and was not in special education." (Id. at 30-31.)

At step four, the ALJ concluded that, given Plaintiff's residual functional capacity, "[she] is capable of performing past relevant work as a fast food worker, and a stock sales attendant." (Id. at 31.) Because of the ALJ's findings at step four, he did not reach step five of the analysis. (See id.) Rather, he concluded that Plaintiff was not disabled. (Id.)

## VI.

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a District Court may review the Commissioner's decision to deny benefits. The Court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001). "Substantial evidence is more than a scintilla, but less than a preponderance." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir.

11

1996)).    To  determine  whether  substantial  evidence  supports  a
finding, "a court must 'consider the record as a whole, weighing both
evidence   that   supports   and   evidence   that   detracts   from   the
[Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting
Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).    "If the
evidence  can  reasonably  support  either  affirming  or  reversing  the
[Commissioner's]  conclusion,  [a]  court  may  not  substitute  its
judgment  for  that  of  the  [Commissioner]." Reddick, 157 F.3d at
720-21 (citing Flaten v. Sec'y of Health & Human Servs., 44 F.3d
1453, 1457 (9th Cir. 1995)).

## VII.
### DISCUSSION

The  parties  have  stipulated  that  the  sole  issue  on  review  is
"[w]hether  the  ALJ  properly  considered  whether  [Plaintiff's]  mental
limitations met or equaled . . . Listing § 12.05[] [(the listing for
mental  retardation)]."  (Joint Stip. 4.)

## A.   Listing § 12.05

The  listings  provide  criteria  for  determining  whether  an
individual  is  conclusively  disabled  by  virtue  of  "[m]ental
retardation."  See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05
[hereinafter Listing § 12.05].   The "introductory paragraph" of
Listing § 12.05 explains that:

> [m]ental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.

Id.  The next paragraph of Listing § 12.05 states that "the required level of severity for this disorder is met when the requirements in [paragraphs] A, B, C, or D are satisfied."  Id.  Paragraph C (or "Listing § 12.05C") provides the following requirements:

> [a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

Listing § 12.05C.

To meet Listing § 12.05 by relying on paragraph C, a claimant must satisfy the criteria of that paragraph *and* the criteria set out in the introductory paragraph.  Maresh v. Barnhart, 438 F.3d 897, 899 (8th Cir. 2006).  Nevertheless, several circuits have held that if the claimant presents evidence of an IQ score of 60 through 70 (*i.e.*, the first prong of Listing § 12.05C), then the claimant presumptively meets the introductory paragraph's criteria.[3]  See, e.g., Hodges v. Barnhart, 276 F.3d 1265, 1268-69 (11th Cir. 2001) (citing Muncy v. Apfel, 247 F.3d 728, 734 (8th Cir. 2004)); Luckey v. U.S. Dep't of Health and Human Servs., 890 F.2d 666, 668-69 (4th Cir. 1989).  Other circuits have declined to adopt this presumption.  See, e.g., Markle

---

[3] As a shorthand, the Court refers to this approach as the "IQ presumption."

v. Barnhart, 324 F.3d 182, 188-89 (3d Cir. 2003); Foster v. Halter, 279 F.3d 348, 354-55 (6th Cir. 2001).  The Ninth Circuit has not yet decided whether to adopt the IQ presumption.  See Applestein-Chakiris v. Astrue, No. 09-00009, 2009 WL 2406358, at *8 (S.D. Cal. Aug. 5, 2009).  Moreover, District Courts in the Ninth Circuit appear to be split on this issue.  Compare Schuler v. Astrue, No. 09-2126, 2010 WL 1443892, at *6 (C.D. Cal. Apr. 7, 2010) ("[A] valid qualifying IQ score obtained by the claimant after the age of 22 creates a rebuttable presumption that the claimant's mental retardation began prior to the age of 22, as it is presumed that IQ scores remain relatively constant during a person's lifetime."), and Flores v. Astrue, No. 11-10714, 2013 WL 146190, at *4 (C.D. Cal. Jan. 11, 2013) ("This Court finds [Schuler's] reasoning persuasive."), with Rhein v. Astrue, No. 09-01754, 2010 WL 4877796, at *7-8 (E.D. Cal. Nov. 23, 2010) ("[T]he Court declines to accept Plaintiff's argument [that] she is entitled to a *per se* 'presumption' that her impairment existed prior to age 22 based solely on valid, qualifying, post-developmental IQ scores."), and Clark v. Astrue, No. 10-2863, 2012 WL 423635, at *5 (E.D. Cal. Feb. 8, 2012) (relying upon Rhein's holding).

     To meet the "physical or other mental impairment" prong of Listing § 12.05C, a claimant must show that he or she has a "severe impairment," as defined in step two of the Commissioner's five-step sequential evaluation process.  See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A [hereinafter Listing § 12.00A] ("For [Listing § 12.05C], we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do work activities, *i.e.*, is a 'severe'

14

impairment(s), as defined in §§ 404.1520(c) and 416.920(c).");
Schuler, 2010 WL 1443892, at *5.

Therefore, assuming the IQ presumption applies, a claimant may demonstrate that he or she meets the listing for mental retardation by showing that he or she has a valid IQ score of 60 to 70 and possesses a physical or other mental impairment that satisfied step two of the five-step sequential evaluation process. See Schuler, 2010 WL 1443892, at *5-6. The presumption can be rebutted by showing that the IQ score is invalid. See Lowery v. Sullivan, 979 F.2d 835, 837-38 (11th Cir. 1992) (citing Popper v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986)), cited with approval in Hodges, 276 F.3d at 1269; Schuler, 2010 WL 1443892, at *6 (citing Lowery, 979 F.2d at 837). To reject the validity of an IQ score, the ALJ may rely on "the claimant's daily activities and behavior."[4] Lowery, 979 F.2d at 837. The IQ presumption may also be rebutted by showing that, notwithstanding the IQ score, the claimant did not have deficits in adaptive functioning that initially manifested before the age of twenty-two. See id. at 838-39.

---

[4] While it is clear that an ALJ can reject the validity of an IQ score, the Ninth Circuit has not yet adopted an approach for conducting this analysis. See Thresher v. Astrue, 283 F.3d App'x 473, 475 & n.6 (9th Cir. 2008). The circuits appear to have advanced different methods for evaluating a claimant's activities. See id. The Sixth Circuit appears to hold that, if an ALJ rejects a claimant's IQ scores because they are inconsistent with that individual's activities, the ALJ's conclusion must be supported by psychiatric authority or empirical evidence. See Brown v. Sec'y of Health & Human Servs., 948 F.2d 268, 269-71 (6th Cir. 1991) (quoting Diagnostic and Statistical Manual of Mental Disorders § 317.00 (3d ed. 1987)). On the other hand, the Eleventh Circuit has rejected scores without requiring such support. See Popp v. Heckler, 779 F.2d 1497, 1498-1500 (11th Cir. 1986).

**B.   The Court Adopts The IQ Presumption**

Plaintiff argues that she meets Listing § 12.05 because (1) she satisfies the IQ presumption and (2) the record shows that she met Listing § 12.05C's "physical or other mental impairment" prong. (See Joint Stip. 4, 7 (citing Schuler v. Astrue, No. 09-2126, 2010 WL 1443892, at *6 (C.D. Cal. Apr. 7, 2010)).   To evaluate Plaintiff's contentions, the Court must first determine whether it should adopt the IQ presumption.

The Eleventh Circuit in Hodges v. Barnhart articulated the rationale for the IQ presumption.   276 F.3d 1265, 1268-69 (11th Cir. 2001).   Hodges reasoned that, because courts have held that IQ scores generally remain fairly constant throughout a person's life, "a [present] valid I.Q. score of 60 to 70 and evidence of [an] additional mental or physical impairment" presumptively satisfy Listing § 12.05.[5]   See id. (citing Muncy v. Apfel, 247 F.3d 728, 734 (8th Cir. 2001); Luckey v. U.S. Dep't of Health and Human Servs., 890 F.2d 666, 668 (4th Cir. 1989)); see also Guzman v. Bowen, 801 F.2d 273, 275 (7th Cir. 1986) (concluding that an IQ score taken after the insured period presumptively "reflects the person's IQ during th[at] insured period").   The court further noted that the Commissioner has made official statements suggesting that intelligence testing during

---

[5] The Fourth Circuit in Luckey v. U.S. Dep't of Health and Human Servs. also adopted this factual premise.   890 F.2d 666, 668 (4th Cir. 1989).   Nonetheless, the court focuses its discussion on Hodges because the Eleventh Circuit provided more detail when discussing the IQ presumption's rationale.

the developmental years would not be required to meet the introductory paragraph of Listing § 12.05:

> The proposed listing . . . stated that the significantly subaverage general intellectual functioning with deficits in adaptive behavior must have been initially "manifested" during the developmental period. *We have always interpreted this word to include the common clinical practice of inferring a diagnosis of mental retardation when the longitudinal history and evidence of current functioning demonstrate that the impairment existed before the end of the developmental period.*

Id. (emphasis in original) (quoting Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50772 (Aug. 21, 2000) [hereinafter Revised Medical Criteria]).

Moreover, the Commissioner made another statement that supports the validity of the IQ presumption. When discussing the changes made to Listing § 12.05 in August 2000, the Commissioner stated:

> [W]e expanded the phrase setting out the age limit for [Listing § 12.05's] "developmental period." The final rules clarify that *we do not necessarily require evidence from the developmental period to establish that the impairment began before the end of the developmental period. The final rules permit us to use judgment, based on current evidence, to infer when the impairment began.*

Revised Medical Criteria at 50753 (emphasis added). Hodges and the Commissioner's public statements collectively provide a strong basis for the adoption of the IQ presumption.

17

Decisions from the Third and Sixth Circuits do not rebut this reasoning. In Markle v. Barnhart, the Third Circuit declined to adopt the IQ presumption. 324 F.3d 182, 188-89 (3d Cir. 2003). However, the panel did not reject Hodges's reasoning to arrive at this conclusion. Rather, the court explicitly stated that a Third Circuit procedural rule prohibited the panel from overruling precedent inconsistent with the IQ presumption. Id. at 188-89 & n.2. The court went on to point out that "a different result might be suggested by the subsequently enacted August 21, 2000 Revised Medical Criteria [(i.e., the Commissioner's statements that were quoted in Hodges)]." See id. at 188-89. Moreover, the panel noted that the binding precedent at issue was decided before the Revised Medical Criteria were issued. See id. at 188.

Furthermore, the Sixth Circuit's decision in Foster v. Halter does little to weaken Hodges's rationale. 279 F.3d 348 (6th Cir. 2001). There, the plaintiff produced several IQ scores, recorded after the age of twenty-two, that were within the range provided by Listing § 12.05C. See id. at 352. Nonetheless, the Court found that these IQ scores were insufficient to presumptively meet the introductory paragraph of Listing § 12.05. See id. at 354-55. In so doing, the court did not address Hodges's reasoning in any way. See id.

Moreover, decisions within this circuit that reject the IQ presumption are not persuasive. For instance, the Eastern District of California in Rhein v. Astrue reasoned that the presumption was inappropriate because it would improperly shift the burden of proof

18

at step three of the five-step evaluation process to the Commissioner and turn the introductory paragraph into "mere surplusage."  No. 09-01754, 2010 WL 4877796, at *8 (E.D. Cal. Nov. 23, 2010).  The court further stated that, even in cases that applied the IQ presumption, there were "no intervening circumstances" between the developmental period and the point at which the IQ scores were recorded that had caused a change in "intellectual functioning."  See id. at *7 (quoting Lawson v. Astrue, No. 08-2008, 2010 WL 961722, at *5 (E.D. Cal. Mar. 16, 2010)) (internal quotation marks omitted).  Consequently, the court held that the IQ presumption should apply only when Plaintiff has "provide[d] evidence supporting early onset of the mental impairment *and* that no intervening circumstances have occurred that impact Plaintiff's IQ."  Id. at *8 (citing Markle, 324 F.3d at 189).

Rhein's reasoning is unconvincing.  There, the court did nothing to rebut the validity of Hodges's premise that IQ scores *generally* remain fairly constant throughout a person's life.  See id. at *7-8.  At most, the court demonstrated that intervening circumstances (*e.g.*, a car accident)[6] can cause a reduction in IQ score.  See id. at *7.  Furthermore, the insistence upon requiring proof of the *absence* of intervening circumstances is quite odd, especially given the fact that the key unpublished District Court case upon which Rhein relied did not put claimants in the awkward position of *proving a negative*.  See Lawson, 2010 WL 961722, at *5 (citing Branham v. Heckler, 775 F.2d 1271, 1274 (4th Cir. 1985); Muncy, 247 F.3d at 734) (emphasis

_____

[6] See Lawson, 2010 WL 961722, at *4-5, cited with approval in Rhein, 2010 WL 4877796, at *7.

19

added) (explaining that those cases applied the "rebuttable [IQ] presumption *unless* [there was a] change in intellectual functioning"). Furthermore, <u>Rhein</u>'s contention that the IQ presumption turns the introductory paragraph into "mere surplusage[,]" <u>Rhein</u>, 2010 WL 4877796, at *8, entirely misses the fact that the IQ presumption can be rebutted by, *inter alia*, evidence that the claimant did not have deficits in adaptive functioning that initially manifested before the age of twenty-two.[7] See <u>Lowery v. Sullivan</u>, 979 F.2d 835, 838-39 (11th Cir. 1992).

In sum, because <u>Hodges</u>'s reasoning is persuasive, the Court joins the other District Courts that have adopted the IQ presumption.[8] <u>See, e.g.</u>, <u>Flores v. Astrue</u>, No. 11-10714, 2013 WL 146190, at *4 (C.D. Cal. Jan. 11, 2013); <u>Woods v. Astrue</u>, No. 10-2031, 2012 WL 761720, at *3-4 (E.D. Cal. Mar. 7, 2012); <u>Forsythe v. Astrue</u>, No. 11-01515, 2012 WL 217751, at *7 (E.D. Cal. Jan. 24, 2012); <u>Campbell v. Astrue</u>, No. 09-00465, 2011 WL 444783, at *16-17 (E.D. Cal. Feb. 8, 2011); <u>Schuler v. Astrue</u>, No. 09-2126, 2010 WL 1443892, at *6 (C.D. Cal. Apr. 7, 2010); <u>Walberg v. Astrue</u>, No. 08-0956, at *8-9 (W.D. Wash. June 18, 2009); <u>Jackson v. Astrue</u>, No. 08-1623, 2008 WL 5210668, at *6 (C.D. Cal. Dec. 11, 2008).

---

[7] Although <u>Clark v. Astrue</u> also refused to adopt the IQ presumption, it did so by relying on <u>Rhein</u>'s reasoning. No. 10-2863, 2012 WL 423635, at *5 (E.D. Cal. Feb. 8, 2012). Thus, the Court need not address this case.

[8] To defend against the imposition of the IQ presumption, Defendant advances the bare conclusion that the presumption "inappropriately shifts the burden of proof from Plaintiff to Commissioner." (Joint Stip. 15 n. 4.)

## C.   **The ALJ's Determination That Plaintiff Does Not Meet A Listing Is Not Supported By Substantial Evidence**

At step three of the five-step sequential evaluation process, the ALJ found that "[t]he evidence does not support a finding that the claimant has the severity of symptoms required either singly or in combination to meet or equal any medical listing." (AR 27.) Plaintiff argues that the Court should reverse the ALJ's decision because the evidence in the record demonstrates that she met Listing § 12.05.[9]  (See Joint Stip. 7-8, 22.)  Although the Court cannot conclude on this record that Plaintiff met Listing § 12.05, the Court does hold that reversal is required because the ALJ's conclusion that Plaintiff did not "meet . . . any medical listing" is not supported by substantial evidence.[10]

---

[9] Because Plaintiff relies upon the IQ presumption, see supra Part VII.B, she appears to be arguing that the ALJ should have considered whether her impairments *met* Listing § 12.05, and not whether they were *medically equivalent to* that listing.

[10] Defendant argues that the ALJ was not required to apply Listing § 12.05 because Plaintiff did not allege (prior to the issuance of the ALJ's decision) that she was mentally retarded. (See Joint Stip. 18-19.) Even assuming that the ALJ's "special duty to develop the record fully and fairly" did not require him to address Listing § 12.05 in his decision, Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001), the Commissioner had the opportunity to address the listing prior to the filing of this civil action. This is because Plaintiff raised the issue before the Appeals Council. (See AR 223-24 (correspondence from Plaintiff's counsel asserting applicability of Listing § 12.05). The Appeals Council could have reversed the ALJ's decision on the basis that it was not supported by substantial evidence, 20 C.F.R. §§ 404.970(a)(2), 404.979, 416.1470(a)(2), 416.1479, and permitted the ALJ to apply the listing on remand. See 20 C.F.R. §§ 404.979, 416.1479 (permitting the Appeals Council to remand case to ALJ). Therefore, Defendant's argument is meritless.

21

Plaintiff has advanced evidence, which the ALJ did not expressly refute, demonstrating that she is entitled to the IQ presumption and that she has a "physical or other mental impairment." Listing § 12.05C. Specifically, Plaintiff has directed the Court to the full scale IQ score of 70 provided by Dr. Taylor, (Joint Stip. 5 (citing AR 278)), and the fact that the ALJ found that Plaintiff suffered from severe impairments that would satisfy Listing § 12.05C's "physical or other mental impairment" prong (*i.e.*, a seizure disorder and asthma).[11] (Id. at 4 (citing AR 26).) As discussed in Part VII.A infra, satisfaction of the IQ presumption and the "physical or other mental impairment prong" can be sufficient to meet Listing § 12.05. Thus, the ALJ's conclusion that Plaintiff did not meet any listing lacks substantial evidence.

Here, Defendant does not contend that Plaintiff failed to meet the "physical or other mental impairment" prong. (See id. at 9-19.) However, Defendant does contend that the IQ score is invalid and that the evidence in the record shows that she did not manifest deficits in adaptive functioning before the age of twenty-two. (See id. at 11-18.)

Defendant argues that, even though the ALJ never expressly addressed the validity of Plaintiff's full scale IQ score, that score

---

[11] Plaintiff also asserts that Dr. Taylor's diagnosis of anxiety satisfies the "physical or other mental impairment" prong of Listing § 12.05C. (Joint Stip. 7.) However, the ALJ explicitly found that this impairment was not severe. (AR 31.) Because the ALJ found that Plaintiff's seizure disorder and asthma constituted "severe impairments," (id. at 26), the Court need not review the ALJ's finding concerning anxiety. See Listing § 12.00A.

is invalid.  (See Joint Stip. 12–13, 15–18.)  Defendant contends that the ALJ's rejection of the low memory scores provided by Dr. Taylor necessarily implies that Plaintiff's full scale IQ score does not fall within the range provided by Listing § 12.05C.  (See id. (citing AR 30 (ALJ's decision)).)  Defendant's premise relies upon the portion of Dr. Amado's opinion that states "[there was] likely suppression of [the full scale IQ score] by very low [working memory/processing speed scores] that were commensurate with [her WMS-III] scores."  (See id. at 12 (quoting AR 292) (internal quotation marks omitted).)

Even if (1) the ALJ properly rejected the validity of the low working memory score and (2) Dr. Amado's opinion is accurate, the Court cannot conclude at this stage that "setting aside [just] the working memory score, the full scale IQ score would not meet Listing [§] 12.05C."  (Id. at 12.)  This is because both the low working memory score *and the low processing speed score* would have contributed to the likely suppression of the full scale IQ score.  Because Defendant does not inform the Court as to how full scale IQ scores are calculated, the Court cannot determine whether the low processing speed score, even in the absence of the working memory score, would have brought the full scale IQ within Listing § 12.05C's range.  Thus, the Court cannot conclude, on this record, that the exclusion of the working memory score would increase the full scale IQ score to a figure above 70.[12]

---

[12] Additionally, Defendant claims that the working memory score would have been irrelevant to any analysis of the full scale IQ score, even if the ALJ had not rejected the working memory score. (See Joint Stip. 11–12, 15.)  Specifically, the Defendant contends

Further, Defendant contends that Dr. Taylor's failure to *explicitly* opine on the validity of the full scale IQ score renders it invalid. (<u>See</u> <u>id.</u> at 15.) Defendant cites a portion of Listing § 12.00 for this proposition, which states in relevant part that "since the results of intelligence tests are only part of the overall assessment of [mental retardation], the narrative report that accompanies the results *should* comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00D.6.a (emphasis added). Defendant cites no other authority for this contention. (<u>See</u> Joint Stip. 15.) The Court rejects Defendant's position because such a strained construction of the regulations would appear to elevate form over substance.

Moreover, Defendant contends that the validity of the IQ score is rebutted by substantial evidence in the form of: Dr. Amado's and Dr. Debolt's opinions, Plaintiff's lack of mental health treatment history, and her admitted functional activities (*e.g.*, self care without assistance). (<u>See</u> <u>id.</u> at 18; AR 28.) However, because the ALJ did not refer to Listing § 12.05 when concluding that Plaintiff's

---

that WAIS-IV's working memory score is not a component of the full scale IQ score contemplated by Listing § 12.05C. (<u>See</u> <u>id.</u> at 11–12.) The Court need not address this issue because, regardless of the rationale for omitting the working memory score from the full scale IQ score, the Court cannot conclude on this record that the exclusion of the former score would cause the latter score to exceed the range of Listing § 12.05C.

impairments failed to meet or equal any listing, reversal and remand for clarification, as opposed to affirmance, is appropriate.[13]

In Thresher v. Astrue, the Ninth Circuit arrived at the same conclusion when considering similar facts. 283 Fed. App'x 473, 474-75 (9th Cir. 2008). There, Thresher had advanced evidence (including IQ scores) tending to establish that she met Listing § 12.05 via paragraph C. See id. Although the ALJ had suggested that "Thresher was not mentally retarded[,]" the ALJ did not reference Listing § 12.05 in her decision. Id. at 475. Notwithstanding the ALJ's failure to reference the listing, the District Court upheld the decision, reasoning that it was supported by substantial evidence. Report & Recommendation at 3-4 Thresher v. Barnhart, No. 06-5071 (W.D. Wash. Oct. 20, 2006); Order Adopting Report & Recommendation Thresher v. Barnhart, No. 06-5071 (W.D. Wash. Jan. 8, 2007). Specifically, the District Court found that the ALJ could have rejected the IQ scores on the basis of (1) a psychiatric expert's opinion that Thresher was not mentally retarded and (2) Thresher's daily activities and behavior. See Report & Recommendation at 3-4 Thresher v. Barnhart, No. 06-5071 (W.D. Wash. Oct. 20, 2006). On appeal, the Ninth Circuit reversed the District

---

[13] Moreover, when discussing Plaintiff's admitted functional activities, Defendant fails to cite any psychiatric authority or empirical evidence demonstrating that such activities are inconsistent with a full scale IQ score of 70. (See Joint Stip. 12, 14-16, 18.) Thus, under the Brown v. Secretary of Health & Human Services, 948 F.2d 268 (6th Cir. 1991) approach, the Court could not reject Plaintiff's full scale IQ score on that basis. See infra note 4. Defendant fails to explain why the Court should not follow the reasoning of Brown. (See Joint Stip. 9-19.) Accordingly, Defendant's position on this issue is weak.

Court's decision.  _Thresher_, 283 Fed. App'x at 474.   The court reasoned that the ALJ's failure to explicitly reject the IQ score indicated that "it [was] unclear whether the ALJ came to grips with the specific requirements of [Listing § 12.05] when she issued her decision."  _Id._ at 475.   Thus, notwithstanding the evidence in the record that could have rebutted the validity of the IQ score, remand for clarification was appropriate.  _See id._

In light of _Thresher_, the court reverses the decision of the ALJ and remands for clarification regarding the validity of Plaintiff's IQ score such that the ALJ can articulate "precisely what was decided and why."  _Id._ (citing _Pinto v. Massanari_, 249 F.3d 840, 848 (9th Cir. 2001); _Christner v. Astrue_, 498 F.3d 790, 794 (8th Cir. 2007)).

Defendant further argues that "the available evidence forecloses any conceivable inference that Plaintiff had any adaptive deficits before age 22."  (Joint Stip. 14.)   Again, notwithstanding the presence of evidence that could rebut the IQ presumption, "it [is] unclear whether the ALJ came to grips with the specific requirements of [Listing § 12.05] when [the ALJ] issued [his] decision."  _Thresher_, 283 Fed. App'x at 475.   Thus, reversal of the ALJ's decision and remand for clarification on this issue is appropriate.[14]  _See id._

---

[14]  Defendant further argues that, even if the ALJ erred by failing to discuss Listing § 12.05, the error was harmless because there is evidence in the record that Defendant believes would rebut the IQ presumption.  (_See_ Joint Stip. 19 (citing _Tommasetti v. Astrue_, 533 F.3d 1035, 1038 (9th Cir. 2008)).)  Nonetheless, District Courts "review only the reasons provided by the ALJ in the disability determination and _may not affirm_ the ALJ on a ground _upon which he_

1

2

**D.    Scope Of Remand**

3       Remanding a matter for further proceedings, as opposed to

4  remanding for an award of benefits, is inappropriate when the record

5  demonstrates that "the ALJ would clearly be required to award

6  benefits." Lingenfelter v. Astrue, 504 F.3d 1028, 1041 (9th Cir.

7  2007). On the other hand, when there are outstanding issues that

8  must be resolved before a determination can be made, and it is not

9  clear from the record that the ALJ would be required to find the

10 plaintiff disabled, a court should remand for further administrative

11 proceedings. See Benecke v. Barnhart, 379 F.3d 587, 593-96 (9th Cir.

12 2004); see also Thresher, 283 Fed. App'x at 475 (remanding case when

13 it was unclear whether ALJ "came to grips" with specific requirements

14 of Listing § 12.05C). For the reasons discussed in Part VII.C infra,

15 it is not clear whether the ALJ would be required to find Plaintiff

16 disabled had the ALJ applied Listing § 12.05. Thus, the Court

17 remands this matter for further administrative proceedings.

18

19      In an effort to terminate these proceedings and avoid any

20 confusion or misunderstanding as to what the Court intends, the Court

21 shall set forth the scope of the remand proceedings. Upon remand,

22

23 *[or she] did not rely*." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir.
   2007) (emphasis added) (citing Connett v. Barnart, 340 F.3d 871, 874

24 (9th Cir. 2003)). Here, although the ALJ relied on some of the
   evidence cited by Defendant to reject Plaintiff's low memory scores,

25 the ALJ did not address much of Defendant's other evidence (*e.g.*, Dr.
   Amado's opinion). (See infra Part V; Joint Stip. 11-18.) Thus,

26 Defendant has failed to properly show that it is "clear from the

27 record that the ALJ's error was inconsequential to the ultimate
   nondisability determination." Tommasetti, 533 F.3d at 1038 (internal

28 quotation marks omitted) (quoting Stout v. Comm'r, Soc. Sec. Admin.,
   454 F.3d 1050, 1055-56 (9th Cir. 2006)).

the ALJ shall assess whether Plaintiff's impairments, either individually or in combination, meet Listing § 12.05. Specifically, the ALJ shall consider: (1) whether Plaintiff's full scale IQ score of 70 is valid, and (2) whether Plaintiff manifested deficits in adaptive functioning before the age of twenty-two. In so doing, the ALJ shall further develop the factual record if he finds that "there is ambiguous evidence or . . . the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001). In the event that the ALJ concludes that Plaintiff's impairments, either individually or in combination, do not meet Listing § 12.05, the ALJ shall adequately articulate the rationale for that conclusion. See Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001) ("An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so.").

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

**VIII.**

**CONCLUSION**


Consistent with the foregoing, the Court REVERSES the decision of the Commissioner and REMANDS this matter to the Commissioner for further administrative action consistent with this Order.   The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.


Dated: December 20, 2013

_____/s/_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE